UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

OSCAR E. COLLAZO,                          :

                    Plaintiff,     :    13 Civ. 5758 (RJS)(HBP)

    -against-                      :    REPORT AND
                                        RECOMMENDATION
CAROLYN W. COLVIN, acting          :
Commissioner of Social Security,
                                   :
                    Defendant.
                                   :
----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE RICHARD J. SULLIVAN, United States

District Judge,


I.   Introduction


          Plaintiff, Oscar E. Collazo, brings this action pursu-

ant to Section 205(g) of the Social Security Act (the "Act"), 42

U.S.C. § 405(g), seeking judicial review of a final decision of

the Commissioner of Social Security ("Commissioner") denying his

application for disability insurance benefits ("DIB") and supple-

mental security income benefits ("SSI").  The Commissioner has

moved for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure (Notice of Motion, dated May 13,

2014 (Docket Item 17)).  Plaintiff has cross-moved for an award

of benefits or remand (Notice of Motion, dated December 1, 2014
(Docket Item 30)).

　　　　　For the reasons set forth below, I respectfully recom-
mend that the Commissioner's motion for judgment on the pleadings
be denied and that plaintiff's motion be granted to the extent of
remanding this matter for further proceedings pursuant to sen-
tence four of 42 U.S.C. § 405(g).

II.　Facts

　　　A.　Procedural
　　　　　Background

　　　　　Plaintiff filed applications for SSI and DIB on August
16, 2010 and September 1, 2010, respectively (Tr.[1] 148, 150).
Plaintiff's SSI application alleged that he had been disabled
since February 2, 2007; his DIB application alleged that he had
been disabled since December 15, 2009 (Tr. 148, 150).  The Social
Security Administration ("SSA") denied plaintiff's application,
finding that he was not disabled (Tr. 74).  Plaintiff timely
requested and was granted a hearing before an Administrative Law
Judge ("ALJ") (see Tr. 46-72).  ALJ Gitel Reich conducted a

---

　　　　[1]"Tr." refers to the administrative record that the
Commissioner filed with her answer, pursuant to 42 U.S.C. §
405(g) (see Notice of Filing of Administrative Record, dated
October 22, 2013 (Docket Item 12)).

hearing on January 5, 2012 (Tr. 46-72).  In a decision dated January 12, 2012, ALJ Reich determined that plaintiff was not disabled within the meaning of the Act (Tr. 25-35).  The ALJ's decision became the final decision of the Commissioner on June 21, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-3).  Plaintiff commenced this action seeking review of the Commissioner's decision on August 15, 2013 (Complaint (Docket Item 2)).

     B.   Plaintiff's
         Social Background

Plaintiff was born on August 18, 1970 and was 41 years old at the time of the ALJ's decision (see Tr. 148).

In a Function Report dated November 27, 2010, plaintiff indicated that he had no difficulty performing personal care activities (Tr. 172).  He stated that he needed reminders to take his medication (Tr. 173).  He wrote that, generally, he prepared all meals for his family (Tr. 173) and that he spent most of his time watching television (Tr. 175).  He reported that he had no difficulties taking public transportation alone (Tr. 174).

Plaintiff wrote that, as a result of back pain, he had difficulty lifting objects and could not stand or walk for long periods of time and occasionally had difficulty climbing stairs

(Tr. 176).  He wrote that when walking, he had to stop every five blocks and rest for ten minutes before he could continue walking (Tr. 177).  He reported that he had no problems with sitting (Tr. 177).  Plaintiff also reported that he had no problems getting along with his family; however, he did not engage in any social activities (Tr. 175).  He also wrote that he had no issues with memory or attention, no difficulties interacting with supervisors or other authority figures and no difficulty following instruc-tions (Tr. 177-78).

In a Work History Report dated September 30, 2010, plaintiff wrote that he had worked as a maintenance worker at Montefiore Hospital from 2001 to 2003 (Tr. 182).  He wrote that he had worked an eight-hour day, during which he walked, stood, climbed, stooped, kneeled, crouched, crawled and handled objects for the entire eight hours (Tr. 184).  He wrote that he did not sit at all during that time (Tr. 184).  He wrote that he could not lift an object heavier than fifty pounds and that he fre-quently lifted twenty-five pounds (Tr. 184).

4

    C.   Plaintiff's
         Medical Background[2]


    1.   FEGS[3] Reports


         Reports from FEGS from May 2008 indicate that plaintiff

had lower back pain, but that he had not had any imaging done of

the affected area and had undergone physical therapy or received

pain medication (Tr. 212).  These notes also state that plaintiff

"hop[ped] on and off [the] exam table with ease [but had] some

limitation of spinal flexion" (Tr. 213).  In addition, the notes

indicate that the worst pain plaintiff reported experiencing was

at a level of four on a scale of one to ten (Tr. 213).  At that

time, plaintiff reported that he occasionally had difficulty

sleeping and felt down or depressed, but that he had no problems

concentrating (Tr. 220).  Plaintiff reported having limited

mobility, but he also reported that he had no restrictions on

_____

        [2]I recite only those facts relevant to my decision.  The
administrative record more fully sets out plaintiff's medical
history (Docket Item 12).

        [3]Until its recent bankruptcy, the mission of F.E.G.S. was
"[t]o meet the needs of the Jewish and broader community through
a diverse network of high quality, cost-efficient health and
human services that help each person achieve greater independence
at work, at home, at school and in the community, and meet the
ever-changing needs of business and our society."  Rivera v.
Colvin, 11 Civ. 7469 (LTS)(DF), 2014 WL 3732317 at *5 n.7
(S.D.N.Y. July 28, 2014) (Swain, D.J.) (alteration in original;
citation omitted).

travel (Tr. 221).  A few months later in 2008, plaintiff reported suffering from severe back pain (Tr. 224).

In a FEGS report from October 2010, plaintiff stated that he was experiencing symptoms of depression (Tr. 234).  He also reported at that time that he was capable of washing dishes, washing clothing, sweeping and mopping the floor, watching television, making beds, shopping, cooking, reading and socializing (Tr. 234-35).

2.  <u>Treating Physicians</u>

a.  <u>Dr. Sharma</u>

Dr. Parvesh Sharma, plaintiff's treating psychiatrist, completed a clinical assessment form in June 2010 (Tr. 264-69), and reported that plaintiff's symptoms included depressed mood, anhedonia,[4] decreased energy, weight change, hopelessness, sleep disturbance, impaired concentration, decreased motivation and irritability (Tr. 264).  Treatment notes from later in June 2010 state that plaintiff showed improvement, was feeling better and was sleeping six to seven hours a night (Tr. 269).  In September 2010, plaintiff reported that he had been out of his medication

---

[4]"Anhedonia" is "total loss of feeling of pleasure in acts that normally give pleasure."  <u>Dorland's Illustrated Medical Dictionary</u>, ("Dorland's") at 89 (27th ed. 1998).

for over a month, but that the medication had not helped his symptoms (Tr. 269).  On December 23, 2010, Dr. Sharma indicated that he believed plaintiff's condition would continue for at least twelve months and that plaintiff would be unable to work during that time (Tr. 326).  In November 2011, Dr. Sharma wrote that plaintiff was not then an active patient and had not had an appointment since February 2011 (Tr. 362).

On November 1, 2011, Dr. Sharma completed an assessment of plaintiff's work abilities (Tr. 352-54).  He found plaintiff had mild restrictions on his ability to understand, remember and carry out simple instructions, to make judgments on simple work-related decisions and to interact appropriately with the public (Tr. 352-53).  He found moderate restrictions on plaintiff's ability to understand and remember complex instructions, to make complex work-related judgments, to interact appropriately with supervisors and coworkers and to respond appropriately to changes in work environment or usual work situations (Tr. 352-53).  He also found plaintiff to be markedly restricted in his ability to carry out complex instructions (Tr. 352).[5]

_____

[5]This form defined a "mild" limitation as a "slight limitation in this area, but the individual can generally function well"; a "moderate" limitation as "more than a slight
(continued...)

b.   Dr. Kriegsman

Treatment notes from Dr. Ari Kriegsman, plaintiff's internist, dated May 19, 2010 indicate that plaintiff suffered from diabetes and depression (Tr. 341).  Dr. Kriegsman's treatment notes from June 11, 2010 show that plaintiff reported doing "a little better" but that his energy level was "still down" (Tr. 342).

Dr. Kriegsman listed plaintiff's conditions on September 23, 2010 as poorly controlled diabetes, depression, hyperlipidemia, morbid obesity and tobacco dependence and noted that plaintiff took the following medication:  Simvastatin, Glucotrol, Metformin and Wellbutrin (Tr. 321; see also Tr. 344-45 (treatment notes from that date)).  Plaintiff continued to treat with Dr. Kriegsman on an approximately monthly basis through January 19, 2011 (Tr. 346-47 (November 2010), 348-49 (December 2010), 350-51 (January 2011)).  Plaintiff did not return for treatment until eight months later on September 26, 2011 (Tr. 331).  At that time, plaintiff reported that his depression and diabetes had worsened (Tr. 331).  Plaintiff reported that his lower back pain

---

[5](...continued)
limitation in this area[,] but the individual is still able to function satisfactorily"; and a "marked" limitation as a "serious limitation in this area.  There is a substantial loss in the ability to effectively function" (Tr. 352).

8

was a five on a scale of one to ten (Tr. 332) and that he had panic attacks when he went outside (Tr. 333).

On October 27, 2011, Dr. Kriegsman reported that plaintiff's blood sugar had been trending down substantially and that his diabetes was doing much better (Tr. 327, 329). He also reported that plaintiff stated that he was not attending his psychiatric appointments because he could not afford them (Tr. 327). Plaintiff denied having thoughts of hurting himself but reported that he had had such thoughts in the prior week after an argument with his mother (Tr. 327). Plaintiff also reported that his back pain was a three on a scale of one to ten (Tr. 328). On December 12, 2011, plaintiff reported experiencing back tightness (Tr. 369). He also reported that he had stopped seeing his psychiatrist because it was too far from his apartment (Tr. 369).

### 3. Consulting Physicians

#### a. Dr. Bougakov

On October 11, 2010, Dr. Dmitri Bougakov, a consulting psychiatrist, completed a psychiatric evaluation (Tr. 270-73). At that time, plaintiff reported difficulty falling asleep, poor appetite, dysphoric mood, low energy, difficulty concentrating, a diminished sense of pleasure and social withdrawal (Tr. 270). He

9

reported being upset because he could not find a job, had no money and did not know how to care for his handicapped mother (Tr. 270).  Dr. Bougakov found that plaintiff could follow and understand simple instructions, perform simple tasks, maintain concentration, make appropriate decisions, relate adequately to others, deal with stress and should be able to maintain a regular schedule (Tr. 272).  Dr. Bougakov opined that plaintiff might be limited in his ability to learn new tasks and perform complex tasks (Tr. 272).

b.   Dr. Revan

On October 11, 2010, Dr. Sharon Revan, a consulting internist, completed an internal medicine exam (Tr. 274-77).  She opined that plaintiff had mild limitations on his ability to walk long distances due to back pain and shortness of breath, limita-tions on standing due to shortness of breath, mild limitations on climbing stairs due to shortness of breath and no limitations on sitting or on activities of daily living (Tr. 277).  An X-ray of plaintiff's lumbosacral spine taken on October 14, 2010 disclosed

mild dextroscoliosis[6] and degenerative disc disease, but no compression fracture (Tr. 278).

### c.  Dr. Misulich

On November 3, 2010, Dr. G. Misulich completed a physical residual functional capacity ("RFC") assessment (Tr. 279-84).  He found that plaintiff could occasionally lift fifty pounds, could regularly lift twenty-five pounds and could stand, walk or sit for about six hours in an eight-hour day (Tr. 280). Dr. Misulich does not appear to have actually examined plaintiff.

### d.  Dr. Kamin

On November 4, 2010, Dr. E. Kamin completed a document entitled Psychiatric Review Technique (Tr. 285-98).  She completed an RFC assessment and found that plaintiff was not significantly limited in most of the RFC categories, with the exception of moderate limitations on the ability (1) to understand and remember detailed instructions; (2) to interact appropriately with the public; (3) to complete a normal workweek without interruption from psychologically based symptoms and (4) to

---

[6]"Dextroscoliosis" is "an appreciable lateral deviation [to the right] in the normally straight vertical line of the spine." See Dorland's at 459, 1497.

11

perform at a reasonable pace without unreasonable breaks (Tr. 299-300).  Dr. Kamin opined that plaintiff retained the ability to perform at least simple, entry-level work (Tr. 301).  Dr. Kamin does not appear to have actually examined plaintiff; her evaluation appears to be based entirely on her review of plaintiff's medical records.

### 4.  Additional Evidence

Plaintiff also submitted an opinion and treatment notes from Dr. Wali Mohammad to the Appeals Council (Tr. 374).  Dr. Mohammad completed a Psychiatric/Psychological Impairment Questionnaire on June 26, 2012 (Tr. 375-82).  Dr. Mohammad reported that he had seen plaintiff twice -- once in May 2012 and once in June 2012 (Tr. 375).  He wrote that plaintiff suffered from bipolar disorder, diabetes, back pain and obesity (Tr. 375).  He found plaintiff's Global Assessment of Functioning ("GAF")[7] to be 45[8] and his prognosis to be poor (Tr. 375).  He indicated that plaintiff's symptoms included mood and sleep disturbance, emo-

---

[7]GAF rates the overall psychological functioning on a scale of 0 to 100 that takes into account psychological, social and occupational functioning.  Diagnostic and Statistical Manual of Mental Disorders, ("DSM-IV") at 32 (4th ed. rev. 2000).

[8]A GAF of 41-50 indicates "Serious symptoms . . . [or] any serious impairment in social, occupational, or school functioning."  DSM-IV at 32.

tional lability,[9] recurrent panic attacks, paranoia or inappropriate suspiciousness, feelings of guilt or worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, obsessions or compulsions, persistent irrational fears, hostility and irritability and pathological dependence or passivity (Tr. 376).

Dr. Mohammad found these symptoms to cause severe restrictions.  He found plaintiff markedly limited in his ability to carry out simple or complex instructions, to sustain a routine without supervision, to work in coordination with or in proximity to others without being distracted by them, to make simple work-related decisions, to complete a workweek without interruption from psychologically based symptoms, to perform at a consistent pace without unreasonable breaks, to interact appropriately with the public, supervisors and coworkers, to maintain socially appropriate behavior and standards of neatness and cleanliness, to respond appropriately to changes in the work setting, to be aware of normal hazards and take reasonable precautions, to travel and to make realistic goals and plan independently (Tr. 378-80).

---

[9]"Lability" is "emotional instability[,] rapidly changing emotions."  Dorland's at 886.

13

The record contains monthly treatment notes from Dr. Mohammad from May 2012 through December 2012. In May 2012, Dr. Mohammad found that plaintiff had a depressed mood but that his memory, concentration, and judgment were intact (Tr. 388). Later that month Dr. Mohammad found plaintiff had a labile mood, anxiety and a GAF of 50 (Tr. 389). In June 2012, plaintiff reported the same symptoms and also reported staying inside and not interacting with people (Tr. 391). Notes from July 2012 reference a work assignment and appear to state that plaintiff was working at High Bridge Food Service (Tr. 391). The notes also reflect that plaintiff was sleeping well and was not experiencing any side effects from his medication (Tr. 391). Notes from August 2012, September 2012 and December 2012 indicate that plaintiff had decreased symptoms with medication, but that plaintiff nevertheless continued to experience residual depression and a labile mood (Tr. 392-93). In addition, Dr. Mohammad's December 2012 notes report that plaintiff was attending job training sessions (Tr. 393).

D.   Proceedings
     Before the ALJ

Plaintiff testified that he had worked at Montefiore Hospital until 2001 and that that job had required him to sweep,

mop and wipe down a clinic area (Tr. 51, 55).  He testified that he had worked an eight-hour day at Montefiore, during which he sat for approximately three hours, stood for approximately four hours, had an hour break for lunch and lifted between five and ten pounds (Tr. 51).  When moving items weighing more than ten pounds, plaintiff testified that he used a dolly or a hand truck (Tr. 53).

Plaintiff testified that in 2009 or 2010 he had worked as a prep cook in the Tribeca Grand Hotel for two months (Tr. 56).  Plaintiff was let go when the chef who hired him was fired (Tr. 57).  He testified that he holds a degree in culinary arts and that he had continued to look for work as a cook until January 2011 (Tr. 59).

Plaintiff testified that he could no longer perform maintenance work because he had injured his back and was unable to lift anything (Tr. 60).  He testified that he could only walk five blocks before he had to stop because of back pain (Tr. 60).  He also testified that he could not work because he was afraid to leave his house and was afraid of disappointment and rejection (Tr. 60-61).  Plaintiff stated that if he disagreed with supervisors, he would "bite [his] tongue" and do what they told him to do (Tr. 64).  Plaintiff testified that he could focus and concentrate (Tr. 65).  He stated that the primary reason he would have

15

difficulty with work would be tardiness and absences due to his fear of leaving his house (Tr. 65). He stated that he was sleeping four to six hours a night, but he did not know what was causing this difficulty and had not discussed it with his physicians (Tr. 66). He stated that he was tired all the time and napped for one or two hours every day (Tr. 66).

Plaintiff testified that his hands shook as a result of the medication he took (Tr. 67). He stated that his typical day consisted of walking his dogs, watching television, cooking and attending medical appointments (Tr. 67). He testified that he went grocery shopping with his mother once a month and did light cleaning (Tr. 70). He lived with his mother and sometimes his nephews would visit him (Tr. 68). He testified that he would "bump heads" with his mother (Tr. 68).

III. Analysis

    A.   Applicable
        Legal Principles

      1.  Standard of Review

The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is based upon an erroneous legal standard. 42 U.S.C. §

16

405(g); <u>Selian v. Astrue</u>, 708 F.3d 409, 417 (2d Cir. 2013) (<u>per curiam</u>); <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012); <u>Burgess v. Astrue</u>, 537 F.3d 117, 127 (2d Cir. 2008).

The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence. <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999); <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision," <u>Ellington v. Astrue</u>, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (Marrero, D.J.); <u>accord</u> <u>Johnson v. Bowen</u>, <u>supra</u>, 817 F.2d at 986, but "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration," <u>Johnson v. Bowen</u>, <u>supra</u>, 817 F.2d at 986.

"'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Talavera v. Astrue</u>, <u>supra</u>, 697 F.3d at 151, <u>quoting</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Consequently, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive

effect' so long as they are supported by substantial evidence."
Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam),
quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).
Thus, "[i]n determining whether the agency's findings were
supported by substantial evidence, 'the reviewing court is
required to examine the entire record, including contradictory
evidence and evidence from which conflicting inferences can be
drawn.'" Selian v. Astrue, supra, 708 F.3d at 417, quoting
Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per
curiam). Where, as here, the claimant has submitted new evidence
to the Appeals Council following the ALJ's decision, such evi-
dence becomes part of the administrative record. See Brown v.
Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Perez v.
Chater, 77 F.3d 41, 45 (2d Cir. 1996).

> 2.   Determination
>       of Disability

A claimant is entitled to SSI and DIB benefits if he
can establish an inability to "engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment . . . which has lasted or can be expected to
last for a continuous period of not less than twelve months."  42
U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see also Barnhart v.

Walton, 535 U.S. 212, 217-22 (2002) (both impairment and inability to work must last twelve months).[10]  The impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D), and it must be "of such severity" that the claimant cannot perform his previous work and "cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Whether such work is actually available in the area where the claimant resides is immaterial.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the Commissioner must consider:  "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Brown v. Apfel, supra, 174 F.3d at 62; DiPalma v. Colvin, 951 F. Supp. 2d 555, 565 (S.D.N.Y. 2013) (Peck, M.J.).

---

[10]The standards that must be met to receive DIB benefits under Title II of the Act are the same as the standards that must be met in order to receive SSI benefits under Title XVI of the Act.  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, cases addressing the latter are equally applicable to cases involving the former.

The Commissioner must follow the five-step process required by the regulations.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step is a determination of whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he is not, the second step requires determining whether the claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If he does, the inquiry at the third step is whether any of these impairments meet one of the listings in Appendix 1 of the regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer to this inquiry is affirmative, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant does not meet any of the listings in Appendix 1, step four requires assessment of the claimant's RFC and whether he can still perform his past relevant work given his RFC.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); see Barnhart v. Thomas, supra, 540 U.S. at 24-25.  If he cannot, then the fifth step requires assessment of whether, given the claim-ant's RFC, he can make an adjustment to other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, he will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); see Selian v.

20

Astrue, supra, 708 F.3d at 417-18; Talavera v. Astrue, supra, 697
F.3d at 151.

RFC is defined in the applicable regulations as "the
most [the claimant] can still do despite [his] limitations."  20
C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  To determine RFC, the
ALJ "identif[ies] the individual's functional limitations or
restrictions and assess[es] his or her work-related abilities on
a function-by-function basis, including the functions in para-
graphs (b),(c), and (d) of 20 [C.F.R. §§] 404.1545 and 416.945."
Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (per
curiam), quoting Social Security Ruling ("SSR") 96-8p, 1996 WL
374184 at *1 (July 2, 1996).  The results of this assessment
determine the claimant's ability to perform the exertional
demands of sustained work which may be categorized as sedentary,
light, medium, heavy or very heavy.  20 C.F.R. §§ 404.1567,
416.967; see Rodriguez v. Apfel, 96 Civ. 8330 (JGK), 1998 WL
150981 at *7 n.7 (S.D.N.Y. Mar. 31, 1998) (Koeltl, D.J.).  This
ability may then be found to be further limited by nonexertional
factors that restrict the claimant's ability to work.  See Butts
v. Barnhart, 388 F.3d 377, 383-84 (2d Cir. 2004), amended in part
on other grounds on reh'g, 416 F.3d 101 (2d Cir. 2005); Bapp v.
Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

The claimant bears the initial burden of proving
disability with respect to the first four steps.  Selian v.
Astrue, supra, 708 F.3d at 418; Burgess v. Astrue, supra, 537
F.3d at 128.  Once the claimant has satisfied this burden, the
burden shifts to the Commissioner to prove the final step -- that
the claimant's RFC allows the claimant to perform some work other
than his past work.  Selian v. Astrue, supra, 708 F.3d at 418;
Butts v. Barnhart, supra, 388 F.3d at 383.

In some cases, the Commissioner can rely exclusively on
the Medical-Vocational Guidelines ("the Grid") contained in 20
C.F.R. Part 404, Subpart P, Appendix 2 when making the determina-
tion at the fifth step.  Gray v. Chater, 903 F. Supp. 293, 297-98
(N.D.N.Y. 1995).  "The Grid takes into account the claimant's RFC
in conjunction with the claimant's age, education and work
experience.  Based on these factors, the Grid indicates whether
the claimant can engage in any other substantial gainful work
which exists in the national economy."  Gray v. Chater, supra,
903 F. Supp. at 298; accord Butts v. Barnhart, supra, 388 F.3d at
383.

The Grid may not be relied upon exclusively in cases
where the claimant has nonexertional limitations that signifi-
cantly restrict his ability to work.  Butts v. Barnhart, supra,
388 F.3d at 383-84; Bapp v. Bowen, supra, 802 F.2d at 605-06.

When a claimant suffers from a nonexertional limitation such that he is "unable to perform the full range of employment indicated by the [Grid]," Bapp v. Bowen, supra, 802 F.2d at 603, or the Grid fails "to describe the full extent of a claimant's physical limitations," Butts v. Barnhart, supra, 388 F.3d at 383 (internal quotation marks and citations omitted), the Commissioner must introduce the testimony of a vocational expert in order to prove "that jobs exist in the economy which claimant can obtain and perform." Butts v. Barnhart, supra, 388 F.3d at 384 (internal quotation marks and citation omitted); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983) ("If an individual's capabilities are not described accurately by a rule, the regula-tions make clear that the individual's particular limitations must be considered.").

### 3.  Treating Physician Rule

When considering the evidence in the record, the ALJ must give deference to the opinions of a claimant's treating physicians.  Under the regulations' "treating physician rule," a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in . . . [the] record."  20 C.F.R.
§§ 404.1527(c)(2), 416.927(c)(2); <u>Shaw v. Chater</u>, 221 F.3d 126,
134 (2d Cir. 2000); <u>Diaz v. Shalala</u>, 59 F.3d 307, 313 n.6 (2d
Cir. 1995); <u>Schisler v. Sullivan</u>, 3 F.3d 563, 567 (2d Cir. 1993).

      Before an ALJ can give a treating physician's opinion
less than controlling weight, the ALJ must apply various factors
to determine the amount of weight the opinion should be given.
These factors include:  (1) the length of the treatment relation-
ship and the frequency of examination, (2) the nature and extent
of the treatment relationship, (3) the medical support for the
treating physician's opinion, (4) the consistency of the opinion
with the record as a whole, (5) the physician's level of special-
ization in the area and (6) other factors that tend to support or
contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2)-(6),
416.927(c)(2)-(6); <u>Schisler v. Sullivan</u>, <u>supra</u>, 3 F.3d at 567;
<u>Mitchell v. Astrue</u>, 07 Civ. 285 (JSR), 2009 WL 3096717 at *16
(S.D.N.Y. Sept. 28, 2009) (Rakoff, D.J.) (adopting Report &
Recommendation); <u>Matovic v. Chater</u>, 94 Civ. 2296 (LMM), 1996 WL
11791 at *4 (S.D.N.Y. Jan. 12, 1996) (McKenna, D.J.).  "[G]ood
reasons" must be given for declining to afford a treating physi-
cian's opinion controlling weight.  20 C.F.R. §§ 404.1527(c)(2),
416.927(c)(2); <u>Schisler v. Sullivan</u>, <u>supra</u>, 3 F.3d at 568; <u>Burris</u>

24

v. Chater, 94 Civ. 8049 (SHS), 1996 WL 148345 at *4 n.3 (S.D.N.Y. Apr. 2, 1996) (Stein, D.J.).

B.    The ALJ's Decision

As an initial matter, the ALJ found that plaintiff met the insured status requirements of the Act through September 30, 2010 (Tr. 30).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 15, 2009 (Tr. 30).

At step two, the ALJ found that plaintiff had severe impairments consisting of degenerative disc disease, diabetes, obesity, depression and a history of substance abuse (Tr. 30).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 31).

The ALJ found that plaintiff was mildly impaired in his ability to perform the activities of daily living (Tr. 31).  The ALJ gave "significant weight" to Dr. Sharma's opinion of November 1, 2011 in this regard (Tr. 31).  The ALJ explained that she could not credit Dr. Sharma's earlier report from December 2010, which opined that plaintiff would be disabled for twelve months,

because treatment notes from February 2011 showed total ameliora-
tion of symptoms (Tr. 31).

      The ALJ found that plaintiff had moderate difficulties
in social functioning (Tr. 31).  She wrote that while plaintiff
testified that he had had problems interacting with supervisors,
earlier statements in the record did not support this.  Neverthe-
less, the ALJ ultimately credited the report from Dr. Sharma,
which stated that plaintiff had moderate difficulty interacting
with others (Tr. 31).

      The ALJ found that plaintiff had mild difficulties with
concentration, persistence and pace (Tr. 32).  She wrote that
while Dr. Sharma found plaintiff to have some moderate to marked
difficulties, these were primarily with understanding and carry-
ing out complex instructions (Tr. 32).  In addition, she noted
that Dr. Bougakov found plaintiff's cognitive symptoms to be mild
but exacerbated by drug and alcohol use (Tr. 32).  The ALJ then
wrote that

            The crucial factor in assessing the degree of
      limitation on the claimant's ability to maintain atten-
      tion and concentration is the evidence of significant
      improvement with medication.  The claimant was seen at
      Montefiore Behavioral Care in June 2010 indicating a
      need for psychiatric medication.  Subsequent reports
      indicate improvement and a report from February 2011
      describes the claimant as doing great and denying
      symptoms of depression (exhibit 12F).  An October 2011
      report from Dr. Kriegsman, the claimant's [at]tending
      internist, indicated that the claimant had increased

26

symptoms of depression. However, the claimant reported
that he had been missing his psychiatric appointments
and was not taking his medications (exhibit 10F, p. 1).

(Tr. 32). The ALJ also wrote that Sections 12.00(G) and (H) in

20 C.F.R. Part 404, Subpart P, Appendix 1 required her to assess

the effects of medication on plaintiff's symptoms and that "where

overt symptomatology [sic] is attenuated by the use of such

drugs, particular attention must be focused on the functional

limitations that may persist" or occur as side effects of medica-

tion (Tr. 32). She wrote that:

> Thus, the claimant's psychiatric impairment re-
> sponds favorably to treatment with medication without
> complaints of significant side effects and recent
> reports relate symptoms of depression to discontinua-
> tion of treatment. Since the effects of treatment,
> both positive and negative, must be factored into an
> assessment of an individual's ability to perform work-
> related functions, I conclude that there is a mild
> impairment on the claimant's ability to maintain con-
> centration, persistence, or pace.

(Tr. 32-33).

At step four, the ALJ found that plaintiff had the RFC

"to perform light work as defined in 20 CFR 404.1567(b) and

27

416.967(b)[11] that requires occasional contact with people" (Tr. 33).

Assessing plaintiff's credibility, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not credible to the extent they [we]re inconsistent with the above [RFC]" (Tr. 34). The ALJ noted that plaintiff stated that he had difficulty standing or walking for long periods of time because he had back pain (Tr. 34). The ALJ also observed that plaintiff testified that he could "pretty much focus" (Tr. 34). The ALJ noted that an October 2010 evaluation described plaintiff's level of pain as two on a scale of ten and plaintiff's worst pain as three on the same scale (Tr. 34). The ALJ noted Dr. Revan's finding that plaintiff had limitations with respect to walking and standing as a result of back pain and shortness of breath (Tr. 34). She also noted that in October 2011, plaintiff reported that his back pain was a five on a scale of one to ten, but that his doctor did not diagnose a back condition (Tr. 34).

---

[11]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ found that Dr. Revan diagnosed plaintiff with degenerative joint disease, hypertension, diabetes, obesity and depression (Tr. 34).  The ALJ also noted that there were few records of plaintiff's overall physical condition (Tr. 34).  The ALJ wrote that plaintiff did not report severe physical restrictions on his ability to perform work-related functions (Tr. 34). She found that while there were some indications that plaintiff had difficulty with prolonged walking or standing, those restrictions were not supported by the record (Tr. 34).  In addition, earlier reports noted that plaintiff was interested in working, and more recent reports found that plaintiff was doing a better job controlling his diabetes (Tr. 34).  The ALJ wrote that, "[c]onsidering the overall evidence, including assessments from the treating facilities as well as the effect of the claimant's obesity on his ability to perform work-related functions . . . I find the claimant retains the [RFC] to perform light work" (Tr. 35).  The ALJ added that plaintiff could have occasional contact with people as a result of his psychological limitations (Tr. 35).

Based on the his RFC, the ALJ found that plaintiff could perform his past relevant work as a maintenance worker at Montefiore Hospital (Tr. 35).  The ALJ wrote that that position required plaintiff to sweep, mop, wipe up spills and clean

29

biohazardous materials (Tr. 35).  It also required plaintiff to

sit for three hours, stand for four hours and lift between five

and six pounds[12] (Tr. 35).  The ALJ found that plaintiff's past

work was light exertional work "as [plaintiff] performed it" and

did not involve significant interaction with people (Tr. 35).  As

a result, the ALJ found that plaintiff could perform that work

and was, therefore, not disabled (Tr. 35).

    C.   Analysis of the
         ALJ's Decision

         Plaintiff argues that remand is required as a result of

a series of legal errors, including:  (1) the ALJ's insufficient

inquiry with respect to plaintiff's past relevant work, (2) the

ALJ's failure to explain her implicit rejection of certain

diagnoses, (3) the Appeals Council's violation of the treating

physician rule, (4) the ALJ's overly vague findings with respect

to plaintiff's ability to interact with people, (5) the ALJ's

failure to consider whether plaintiff was entitled to a closed

period of benefits, (6) the ALJ's inconsistent treatment of Dr.

Sharma's opinion and (7) the ALJ's incorrect assessment of the

_____

    [12]Plaintiff testified that he could lift between five and
ten pounds (Tr. 51-53).

30

effects and consistency of plaintiff's treatment.[13]  In her
motion for judgment on the pleadings, the Commissioner argues
that the ALJ's RFC determination is supported by substantial
evidence (Memorandum of Law in Support of the Commissioner's
Motion for Judgment on the Pleadings, dated May 13, 2014 (Docket
Item 18) ("Comm'r Mem.") at 14), and plaintiff, in his response,
argues that the ALJ's RFC determination is not supported by
substantial evidence (Memorandum of Law in Further Support of
Plaintiff's Cross-Motion to Award Benefits and/or Remand, dated
January 20, 2015 (Docket Item 34) ("Pl.'s Reply") at 5).


                1.   Past Relevant Work


          Plaintiff first argues that remand is required because
the ALJ failed to conduct sufficient inquiry with respect to the
duties plaintiff performed at his past relevant work (Pl.'s Mem.
at 5-6).

          In a document entitled Work History Report, dated
September 30, 2010, plaintiff wrote that during his eight-hour

----

          [13]Plaintiff also argues that his nonexertional limitations
precluded the ALJ from relying on the Grid to support a finding
of "not disabled" (Plaintiff's Memorandum of Law in Support of
Plaintiff's Cross-Motion for Benefits or Remand, dated December
1, 2014 (Docket Item 31) ("Pl.'s Mem.") at 3).  The ALJ never
reached step five of the disability analysis and, therefore,
never made any findings based on the Grid.

work day at Montefiore, he walked, stood, climbed, stooped,
kneeled, crouched and handled large and small objects for eight
hours and did not spend any of his work day sitting (Tr. 184).
He also wrote that he frequently carried twenty-five pounds and
that the heaviest weight he lifted was fifty pounds (Tr. 184).
When the ALJ questioned him about his job duties at the hearing,
plaintiff testified that, during an eight-hour day, he sat for
three hours, stood or walked for four hours, took a one-hour
lunch break and lifted five or ten pounds (Tr. 51).  He stated
that for any greater weight, he used a dolly or a hand truck (Tr.
53).

In her analysis of plaintiff's claimed disability, the
ALJ relied on the job description that plaintiff provided at the
hearing (Tr. 35).  She wrote:

> Claimant described his maintenance work in Monte-
> fiore Hospital as entailing sweeping, mopping, wiping
> up spills, and cleaning up biohazardous materials.  He
> sat for 3 hours, stood for 4 hours and lifted between
> 5-6 pounds.[14]   Heavier items were lifted by doll[ie]s
> and hand trucks.
>
> In comparing the claimant's residual functional
> capacity with the physical and mental demands of this
> work, I find that the claimant is able to perform it as

---

[14]Plaintiff actually testified that he lifted five or ten
pounds (Tr. 51); however, the difference is not material.  See 20
C.F.R. §§ 404.1567(b), 416.967(b) (light work requires lifting no
more than twenty pounds and frequently lifting or carrying no
more than ten pounds).

> actually performed.  I find that the claimant's past
> relevant work was in the light exertional range as he
> performed it and did not involve significant interac-
> tion with people.

(Tr. 35) (syntactical errors in original).

Plaintiff argues that there was a conflict between his
testimony and the description of his past relevant work in the
Dictionary of Occupational Titles ("DOT"); the ALJ classified
plaintiff's past relevant work as light work based on plaintiff's
own description of his job, notwithstanding the fact that the DOT
classifies it as medium work (Pl.'s Mem. at 3).  This conflict is
immaterial.  To support a finding of disability, a claimant must
show that he is unable to perform his past relevant work both as
it is generally performed and as he actually performed it.
Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003), citing
Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981) and SSR 82-62,
1982 WL 31386 at *3 (S.S.A. Jan. 1, 1982); accord Pagnani v.
Comm'r of Soc. Sec., 1:12-CV-1287 (NAM/VEB), 2014 WL 1268912 at
*9 (N.D.N.Y. Mar. 26, 2014) (adopting Report & Recommendation).

Plaintiff argues that the ALJ had insufficient informa-
tion regarding his past relevant employment for her to conclude
that he was still able to perform that work (Pl.'s Mem. at 6).
In particular, plaintiff argues that the ALJ ignored the possi-
bility that plaintiff was lifting twenty-five or fifty pounds

onto dollies or hand trucks and that the record contained no

information concerning the mental demands of plaintiff's past

relevant work (Pl.'s Mem. at 6).[15]

Under case law and SSR 82-62, supra, 1982 WL 31386, the

ALJ is required to "make a specific and substantial inquiry into

the relevant physical and mental demands associated with the

claimant's past work, and compare these demands to the claimant's

residual capabilities." Kerulo v. Apfel, 98 Civ. 7315 (MBM),

1999 WL 813350 at *8 (S.D.N.Y. Oct. 7, 1999) (Mukasey, D.J.);

---

[15]Plaintiff argues that the ALJ had a duty to question
plaintiff about his past work because his testimony was
"internally inconsistent" (Pl.'s Mem. at 4-5).  Plaintiff
contends that his description of work that entailed some sweeping
and mopping is inconsistent with sitting for three hours during
the day (Pl.'s Mem. at 4-5).  There is no internal inconsistency
given the fact that plaintiff's job duties were performed over an
eight-hour work day.

In addition, plaintiff cites Gonzalez v. Apfel, 113 F.
Supp. 2d 580 (S.D.N.Y. 2000) (R.L. Carter, D.J.), in support of
his contention that the ALJ had a duty to confront plaintiff with
his prior statements regarding his past work (Pl.'s Mem. at 1-2,
4).  In Gonzalez, the pro se plaintiff, in addition to providing
testimony about his past work that conflicted with prior
statements, testified that his past work was "light work" without
knowing the legal significance of that term.  Gonzalez v. Apfel,
supra, 113 F. Supp. 2d at 584-85, 586-87.  The court analyzed the
ALJ's failure to question the plaintiff sufficiently under the
heightened duty imposed upon an ALJ to provide a full and fair
hearing when a claimant is unrepresented.  Gonzalez v. Apfel,
supra, 113 F. Supp. 2d at 586-87.  Here, plaintiff was
represented by an attorney at his hearing, and his case is more
properly analyzed under the requirements of SSR 82-62, discussed
in the text.

accord Abbott v. Colvin, 596 F. App'x 21, 23 (2d Cir. 2015)
(summary order) ("[W]hether the claimant retains the functional
capacity to perform past work which has current relevance has
far-reaching implications and must be developed and explained
fully in the disability decision." (internal quotation marks and
citation omitted; emphasis in original)); Barone v. Astrue, 09
Civ. 7397 (KBF)(DF), 2011 WL 7164421 at *16 (S.D.N.Y. Dec. 27,
2011) (Freeman, M.J.) (Report & Recommendation), adopted at 2012
WL 382925 (S.D.N.Y. Feb. 6, 2012) (Forrest, D.J.).  In addition,

> When a claimant has limitations due to a mental or
> emotional impairment, "care must be taken to obtain a
> precise description of the particular job duties which
> are likely to produce tension and anxiety, e.g., speed,
> precision, complexity of tasks, independent judgments,
> working with other people, etc., in order to determine
> if the claimant's mental impairment is compatible with
> the performance of such work."  SSR 82-62.

Sanderson v. Astrue, 08-CV-1177 (GTS)(VEB), 2011 WL 1113856 at *9
(N.D.N.Y. Jan. 19, 2011) (Report & Recommendation), adopted at
2011 WL 1113805 (N.D.N.Y. Mar. 24, 2011); see Weakland v. Astrue,
10-CV-519S, 2012 WL 1029671 at *11 (W.D.N.Y. Mar. 26, 2012).

Here, while the ALJ did question plaintiff regarding
the demands of his past work, she did not make "specific and
substantial inquiry," and it is not clear that she had sufficient
evidence to make the requisite findings of fact (see Tr. 51-53).

With respect to the physical demands of plaintiff's past work, his testimony indicated that he was required to move items weighing more than ten pounds.  While he testified that he used dollies or hand trucks for the heavier items, the ALJ failed to determine how much those items weighed, whether plaintiff was required to lift the items onto a dolly or hand truck, and whether and how often plaintiff had to lift or push those items. The ALJ did not inquire into the level of exertion required for such tasks and as a result could not determine whether plaintiff retained the RFC to perform them.

In addition, the ALJ did not question plaintiff regarding the mental requirements of his past work (see Tr. 51, 53). As a result, it is not clear that there was a basis for the ALJ's finding that plaintiff's past work required no significant interaction with people.  See Nieves v. Astrue, 3:08-cv-311 (GLS/VEB), 2009 WL 2601237 at *6 (N.D.N.Y. Aug. 20, 2009) (adopting Report & Recommendation) (remanding because the ALJ failed to make any inquiry into the nonexertional demands of the plaintiff's past relevant work before determining she could perform it); Kerulo v. Apfel, supra, 1999 WL 813350 at *9 (remanding because the record contained no evidence of the mental demands of the plaintiff's past relevant work).

36

Accordingly, remand is required for the ALJ to make further inquiry into the physical and mental demands of plaintiff's past relevant work.  See Sanderson v. Astrue, supra, 2011 WL 1113856 at *9 ("[I]t is not clear that the ALJ had enough evidence to make the requisite findings of fact" with respect to "the 'physical and mental demands' of Plaintiff's past relevant work.").

2.   Failure to Explain Implicit
     Rejection of Diagnoses

Plaintiff next argues that the ALJ erred in failing to analyze whether plaintiff suffered from bipolar disorder or agoraphobia and failing to determine whether those impairments were severe (Pl.'s Mem. at 8-10).

The ALJ's failure to address plaintiff's possible diagnoses of bipolar disorder and agoraphobia at step two of the sequential analysis was harmless.  The ALJ found that plaintiff had a severe mood disorder, major depression; thus, an additional diagnosis of bipolar disorder or agoraphobia would not have altered the disability analysis in any meaningful way.  See Woodmancy v. Colvin, 577 F. App'x 72, 74 n.1 (2d Cir. 2014) (summary order) ("[W]e identify no error warranting remand because the ALJ did identify severe impairments at step two, so

37

[plaintiff]'s claim proceeded through the sequential evaluation process, in which all of [plaintiff]'s ailments were part of the analysis.").  Plaintiff does not argue that he suffered from symptoms or limitations that the ALJ failed to address as a result of her failure to discuss the possibility that he had either bipolar disorder or agoraphobia.  In addition, according to treatment notes, plaintiff appears to have diagnosed himself with agoraphobia through the use of an internet service (Tr. 333).

Accordingly, remand is not required on the basis of the ALJ's failure to discuss these diagnoses.  I note, however, that since the matter is being remanded for other reasons, the ALJ should address all of plaintiff's diagnoses in her determination of plaintiff's RFC.

                    3.    Appeals Council's
                          Violation of Treating
                          Physician Rule

Plaintiff contends that remand is also warranted because the Appeals Council violated the treating physician rule when it failed to give good reasons for declining to accord Dr. Mohammad's opinion controlling weight (Pl.'s Mem. at 11).  The Commissioner argues that Dr. Mohammad's opinion need not have been considered by the Appeals Council because it did not relate

to the relevant period and, was not, therefore, material (Memo-randum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings and in Further Support of the Commissioner's Motion for Judgment on the Pleadings, dated January 9, 2015 (Docket Item 33) ("Comm'r Reply") at 7-8).

As plaintiff correctly notes, the Appeals Council is bound by the treating physician rule. Here, the Appeals Council stated in its denial that it "considered . . . the additional evidence" and that it found that the additional evidence "did not provide a basis for changing the [ALJ]'s decision" (Tr. 1-2). This statement did not "satisfy the regulations' requirement that the Commissioner give good reasons for the weight given the treating physician's opinion; obviously, the ALJ could not explain the rejection of the treating physician's opinion first submitted during appeal, and the Appeals Council failed to offer any explanation for its rejection of that opinion." McIntire v. Astrue, 809 F. Supp. 2d 13, 20-21 (D. Conn. 2010); accord Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998); Nicholson v. Colvin, 5:13-cv-00027 (MAD), 2014 WL 991827 at *4 (N.D.N.Y. Mar. 13, 2014); Shrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (adopting Report & Recommendation).

However, "[i]f new and material evidence is submitted, the Appeals Council [is obligated to] consider the additional

evidence only where it relates to the period on or before the date of the [ALJ's] decision." Cahill v. Colvin, 12 Civ. 9445 (PAE)(MHD), 2014 WL 7392895 at *31 (S.D.N.Y. Dec. 29, 2014) (Engelmayer, D.J.) (adopting Report & Recommendation), quoting 20 C.F.R. § 404.970(b); accord Rutkowski v. Astrue, 368 F. App'x 226, 229 (2d Cir. 2010) (summary order); Baladi v. Barnhart, 33 F. App'x 562, 564 (2d Cir. 2002) (summary order). Thus, if Dr. Mohammad's opinion was not new, material or relevant to the period on or before the date of the ALJ's decision, the Appeals Council's failure to comply with the treating physician rule was harmless.

The parties dispute whether Dr. Mohammad's opinion relates to the relevant time period. Dr. Mohammad's treatment notes cover the period from May 2012 through December 2012, and his opinion is dated June 26, 2012 (Tr. 382, 390-93). Thus, these documents were created after the relevant time period, which ended on January 12, 2012. Nevertheless, the fact that medical evidence did not exist until after the ALJ's decision does not necessarily make it irrelevant to plaintiff's condition during the relevant time period; evidence of the nature of the condition after the relevant time period may bear on the severity of the condition during the relevant time period. Thompson v. Colvin, 12 Civ. 7024 (PAE)(HBP), 2014 WL 7392889 at *21 (S.D.N.Y.

40

Dec. 29, 2014) (Engelmayer, D.J.) (adopting Report & Recommenda-
tion), <u>citing</u> <u>Pollard v. Halter</u>, 377 F.3d 183, 193-94 (2d Cir.
2004) <u>and</u> <u>Lisa v. Sec'y of Dep't of Health & Human Servs.</u>, 940
F.2d 40, 44 (2d Cir. 1991).

   Plaintiff appears to argue that Dr. Mohammad's opinion
relates to the relevant time period because the earliest treat-
ment notes on which his opinion was based were created three and
a half months after the ALJ's decision, rendering Dr. Mohammad's
opinion retrospective (Pl.'s Reply at 10; <u>see</u> Pl.'s Mem. at 12-
13).[16]  Plaintiff does not explain the reasoning that leads him
to conclude that Dr. Mohammad's opinion is retrospective (<u>see</u>
Pl.'s Mem. at 12-13; Pl.'s Reply at 10).  The Commissioner argues
that Dr. Mohammad's opinion does not relate to the relevant time
period because it was generated after the date of the ALJ's
decision and was based on treatment that began after the ALJ's
decision (Comm'r Reply at 7-9).

---

   [16]Plaintiff argues for the first time in his reply brief
that the Appeals Council had a duty to develop the record and
reach out to Dr. Mohammad if the Appeals Council was unsure
whether his opinion was retrospective (Pl.'s Reply at 10).  This
argument is not properly raised.  "This Circuit has made clear it
disfavors new issues being raised in reply papers." <u>Rowley v.</u>
<u>City of New York</u>, 00 Civ. 1793 (DAB), 2005 WL 2429514 at *5
(S.D.N.Y. Sept. 30, 2005) (Batts, D.J.), <u>citing</u>, <u>inter</u> <u>alia</u>,
<u>Keefe v. Shalala</u>, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995); <u>accord</u>
<u>Magnoni v. Smith & Laquercia</u>, 483 F. App'x 613, 616 (2d Cir.
2012) (summary order).

After reviewing the opinion and notes from Dr. Mohammad, I conclude that these documents do not relate to the relevant time period.  See Thompson v. Colvin, supra, 2014 WL 7392889 at *21, *23; Shrack v. Astrue, supra, 608 F. Supp. 2d at 302, 302 n.2.  Plaintiff saw Dr. Mohammad for the first time three and a half months after the ALJ's decision.  While Dr. Mohammad expressed an opinion on plaintiff's psychiatric status during the period he treated plaintiff, and prospectively from there, he had never treated plaintiff during the relevant time period and never claimed to offer any insight into plaintiff's work abilities prior to the time that plaintiff saw him.  There is no indication that Dr. Mohammad's opinion was retrospective.

Accordingly, remand is not required for the assessment of Dr. Mohammad's opinion under the treating physician rule.[17]

---

[17]Plaintiff cites Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999), and argues that remand is required for the ALJ to explain why it did not consider Dr. Mohammad's opinion, even if that explanation is that the opinion does not relate to the relevant time period (Pl.'s Mem. at 12; Pl.'s Reply at 10).  Plaintiff's argument ignores the procedural posture and facts of Snell.  In Snell, the plaintiff's case was in front of the Appeals Council as a result of the Council's sua sponte vacatur of an ALJ's decision awarding benefits.  Snell v. Apfel, supra, 177 F.3d at 131-32, 134.  In addition, Snell did not involve new evidence submitted for the first time on appeal.

4.   Overly Vague
     Findings

Plaintiff next argues that remand is required because the ALJ's findings with respect to plaintiff's ability to interact with people "occasional[ly]" were too vague (Pl.'s Mem. at 13-14).  Plaintiff notes that "occasional" is defined as "occurring from very little up to one-third of the time" under SSR 83-10, 1983 WL 31251 at *5 (S.S.A. Jan. 1, 1983), and seeks a remand for the ALJ to make a more specific finding within that range (Pl.'s Mem. at 13-14).  Plaintiff argues that greater specification is required because it is unclear whether plaintiff's past work, which the ALJ found "did not involve significant interaction with people," requires more than "occasional" interaction with people (Tr. 35) (Pl.'s Mem. at 13-14).

Plaintiff's argument is not convincing.  "Occasional," as plaintiff correctly notes, is a term of art within the Social Security regime.  It means that a claimant can perform that activity "up to one-third of the time."  Owens v. Colvin, 727 F.3d 850, 852 (8th Cir. 2013); accord Carson v. Barnhart, 140 F. App'x 29, 37 (10th Cir. 2005) (order & judgment); Borski v. Barnhart, 33 F. App'x 220, 224 (7th Cir. 2002).  Thus, the ALJ's finding that plaintiff could have occasional contact with people was a finding that plaintiff could have contact with people for

43

up to one-third of his work day.  Plaintiff does not have a
serious argument that a job that did not involve significant
interaction with people required contact with people for more
than one-third of the time.

Accordingly, remand is not required on this basis.

### 5.    Consideration of
         <u>Closed Period of Benefits</u>

Plaintiff contends that remand is also required because
the ALJ failed to consider whether plaintiff was eligible for a
closed period of benefits between December 15, 2009 and December
23, 2010 (Pl.'s Mem. at 15-16).  Plaintiff premises this argument
on the ALJ's treatment of Dr. Sharma's December 23, 2010 opinion
that plaintiff would be unable to work for twelve months (Pl.'s
Mem. at 15).  The ALJ did not credit this opinion because she
found plaintiff's symptoms showed improvement two months later
(Tr. 31).  Plaintiff contends that because the ALJ found improve-
ment in his condition subsequent to Dr. Sharma's December 2010
opinion, the ALJ was required to determine whether he was dis-
abled prior to that opinion (Pl.'s Mem. at 16).[18]

_____

[18]In his reply brief, plaintiff raises for the first time an
argument that the ALJ failed to provide good reasons for
rejecting Dr. Sharma's December 2010 opinion; however, on the
same page, plaintiff also argues that the ALJ clearly accepted
                                            (continued...)

For any award of benefits, the disability period must last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Rodriguez v. Barnhart, 249 F. Supp. 2d 210, 212 (E.D.N.Y. 2003).  "A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status."  Pettaway v. Colvin, 12-CV-2914 (NGG), 2014 WL 2526617 at *13 (E.D.N.Y. June 4, 2014), quoting Deronde v. Astrue, 7:11-CV-0998 (GTS/ESH), 2013 WL 869489 at *1 (N.D.N.Y. Feb. 11, 2013) (Report & Recommendation), adopted at, 2013 WL 868076 (N.D.N.Y. Mar. 7, 2013).

Here, the ALJ found that plaintiff had "not been under a disability . . . from December 15, 2009, through the date of [her] decision" (Tr. 35), and the evidence on which the ALJ relied in determining that plaintiff was not disabled was dated less than twelve months after December 15, 2009.  For example, the ALJ cited:  (1) an October 2010 report from FEGS reflecting that plaintiff reported low levels of pain and an interest in working (Tr. 34), (2) Dr. Bougakov's psychiatric evaluation of

---

[18](...continued)
Dr. Sharma's December 2010 opinion (Pl.'s Reply at 7).  As discussed in footnote 17, it is not proper to raise a new argument for the first time in a reply brief.

45

October 11, 2010, which found plaintiff's symptoms did not interfere with his ability to function (Tr. 32), (3) Dr. Revan's internal medicine examination of October 11, 2010, which found plaintiff to have some mild physical limitations (Tr. 34), and (4) a function report completed by plaintiff on November 27, 2010 in which he reported having no difficulties interacting with people (Tr. 31).  The foregoing precluded a finding of disability for the closed period of time suggested by plaintiff.  Pettaway v. Colvin, supra, 2014 WL 2526617 at *14.

Accordingly, remand is not required for consideration of a closed period of benefits.

### 6.   Inconsistent Treatment of Dr. Sharma's Opinion

Plaintiff next argues that remand is required because the ALJ was inconsistent in her treatment of Dr. Sharma's November 1, 2011 opinion (Pl.'s Mem. at 17).  Specifically, plaintiff contends that while the ALJ gave "significant" weight to Dr. Sharma's November 1, 2011 opinion, she implicitly rejected that aspect of the opinion that plaintiff was moderately limited in his ability to respond appropriately to work-related situations or changes in work settings (Pl.'s Mem. at 17).  In support of this contention, plaintiff cites the fact that the ALJ found

plaintiff capable of light work (Pl.'s Mem. at 17).  Plaintiff

argues that, pursuant to SSR 85-15, 1985 WL 56857 at *4 (S.S.A.

Jan. 1, 1985), light work requires the ability to respond appro-

priately to work-related situations or changes in work settings

and that the ALJ must, therefore, have rejected Dr. Sharma's

opinion that plaintiff was moderately limited in this area (Pl.'s

Mem. at 17).

    The Commissioner responds that it was permissible for

the ALJ to reject Dr. Sharma's opinion concerning this restric-

tion because other evidence supported the finding that plaintiff

was not significantly restricted in that area, and the ALJ could

properly credit a portion of a physician's opinion while reject-

ing another part (Comm'r Reply at 4).

    Although the ALJ never expressly assessed plaintiff's

ability to respond appropriately to work-related situations, she

was not required to discuss explicitly every piece of evidence.

See Wasiewicz v. Colvin, 13-CV-1026S, 2014 WL 5465451 at *4-*5

(W.D.N.Y. Oct. 28, 2014) (ALJ not required to assess explicitly

every moderate limitation), citing Retana v. Astrue,

11-cv-00105-PAB, 2012 WL 1079229 at *6 (D. Colo. Mar. 30, 2012);

Cole v. Colvin, 12 Civ. 8597 (ALC), 2014 WL 1224568 at *2

(S.D.N.Y. Mar. 24, 2014) (A.L. Carter, D.J.) ("The Commissioner

is not required to 'reconcile explicitly every conflicting shred

47

of medical testimony' but may not issue an 'an unreasoned rejec-
tion of all the medical evidence in a claimant's favor.'"),
quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008)
(summary order).

     The fact that the ALJ found plaintiff "not disabled"
despite plaintiff's treating physician's opinion that plaintiff
had moderate limitations in certain work abilities does not,
without more, indicate that the ALJ rejected the physician's
opinion.  While plaintiff is correct that SSR 85-15 lists abili-
ties for performing remunerative work, SSR 85-15, supra, 1985 WL
56857 at *4-*8, it does not provide that any claimant with
moderate limitations in one of these areas is necessarily dis-
abled.  Rather, SSR 85-15 states that

> The basic mental demands of competitive, remunerative,
> unskilled work include the abilities (on a sustained
> basis) to understand, carry out, and remember simple
> instructions; to respond appropriately to supervision,
> coworkers, and usual work situations; and to deal with
> changes in a routine work setting.  A substantial loss
> of ability to meet any of these basic work-related
> activities would severely limit the potential occupa-
> tional base.  This, in turn, would justify a finding of
> disability because even favorable age, education, or
> work experience will not offset such a severely limited
> occupational base.

SSR 85-15, 1985 WL 56857, supra, at *4.

     The form completed by Dr. Sharma defined "moderate" as
"more than a slight limitation in this area[,] but the individual

is still able to function satisfactorily" (Tr. 352).  The form defined "marked" as a "serious limitation in this area [with] a substantial loss in the ability to effectively function" (Tr. 352).  Based on these definitions, Dr. Sharma's finding that plaintiff was moderately impaired in his ability to respond appropriately to work-related situations or changes in work settings does not imply that the ALJ must have rejected that portion of Dr. Sharma's opinion in order to conclude that plaintiff was not disabled.  Moreover, the Act specifically contemplates that a claimant could have limitations and yet still be capable of performing remunerative work.  See, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (defining RFC as "the most [a claimant] can still do despite [his] limitations"); see also Lawler v. Astrue, 512 F. App'x 108, 111-12 (2d Cir. 2013) (summary order); Spear v. Astrue, 13-CV-6017P, 2014 WL 4924015 at *17 (W.D.N.Y. Sept. 30, 2014) ("Although both [physicians] opined that [plaintiff] had moderate limitations in certain categories of mental work-related functions, both ultimately concluded that [plaintiff] was capable of understanding simple directions and performing simple tasks independently.").

49

Accordingly, remand is not required for the ALJ to assign weight to a portion of Dr. Sharma's November 2011 opinion.[19]

### 7.   Effects and Consistency of Treatment

Plaintiff next argues that the ALJ improperly addressed the effects and consistency of plaintiff's treatment (Pl.'s Mem. at 18-19).

#### a.   Effects of Medication

Plaintiff argues that the ALJ improperly addressed the effects of plaintiff's medication by incorrectly applying Sections 12.00(G) and (H) of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Pl.'s Mem. at 18).  Plaintiff contends that the ALJ inappro-

---

[19]Plaintiff also argues that the ALJ's RFC determination was not supported by substantial evidence because of this alleged rejection of a portion of Dr. Sharma's November 2011 opinion (Pl.'s Reply at 5).  As discussed above, the ALJ explicitly adopted Dr. Sharma's opinion, and it does not appear that she rejected the portion that found plaintiff moderately limited in his ability to respond appropriately to work-related situations or changes in work settings.  Moreover, based on Dr. Sharma's November 2011 opinion, the ALJ acknowledged plaintiff's moderate limitation with respect to interacting with supervisors and coworkers, and she also found plaintiff capable of understanding, remembering and carrying out simple instructions (see Tr. 31-32, 352).  See Lawler v. Astrue, supra, 512 F. App'x at 111-12; Spear v. Astrue, supra, 2014 WL 4924015 at *17.

priately took into account the beneficial effects of medication when he was not taking his medication (Pl.'s Mem. at 18).

Section 12.00(G) requires the ALJ to

give attention to the effects of medication on [a claimant's] symptoms, signs, and ability to function. . . .  In cases where overt symptomatology [sic] is attenuated by the use of such drugs, particular attention must be focused on the functional limitations that may persist.  We will consider these functional limitations in assessing the severity of your impairment. . . .  We will consider [any] side effects [from medication] when we evaluate the overall severity of [a claimant's] impairment.  Where adverse effects of medications contribute to the impairment severity and the impairment(s) neither meets nor is equivalent in severity to any listing but is nonetheless severe, we will consider such adverse effects in the RFC assessment.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(G).

Section 12.00(H) provides that

[w]ith adequate treatment some individuals with chronic mental disorders not only have their symptoms and signs ameliorated, but they also return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders.  Treatment may or may not assist in the achievement of a level of adaptation adequate to perform sustained [substantial gainful activity].

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(H).

The ALJ set forth the text of these Sections almost verbatim in her opinion (Tr. 32).  She subsequently concluded that

the claimant's psychiatric impairment responds favorably to treatment with medication without complaints of

51

significant side effects and recent reports relate
symptoms of depression to discontinuation of treatment.
Since the effects of treatment, both positive and
negative, must be factored into an assessment of an
individual's ability to perform work-related functions,
I conclude that there is a mild impairment on the
claimant's ability to maintain concentration, persis-
tence, or pace.

(Tr. 32-33).

The ALJ appropriately assessed the effects of plain-
tiff's medication under Sections 12.00(G) and (H).  The ALJ's
reference to "discontinuation of treatment" was part of this
analysis, noting that plaintiff's worsening symptoms were due to
the cessation of treatment, not to ineffective treatment or to
side effects from medication.

Plaintiff also appears to contend that the ALJ inappro-
priately failed to engage in the analysis under Sections 12.00(G)
and (H) at step three of the disability evaluation process,
instead using these Sections in her RFC analysis at step four
(Pl.'s Mem. at 18).  Contrary to plaintiff's contention, the ALJ
did perform this analysis at step three of the disability evalua-
tion (see Tr. 32-33).  Moreover, these regulations appear to
apply to both step three and step four of the disability analy-
sis.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(G); Grace v.
Astrue, 11 Civ. 9162 (ALC)(MHD), 2013 WL 4010271 at *20 (S.D.N.Y.

July 31, 2013) (A.L. Carter, D.J.) (adopting Report & Recommendation).

Accordingly, plaintiff's arguments fail with respect to the ALJ's analysis pursuant to Sections 12.00(G) and (H).

### b.   Failure to Comply with Treatment

Plaintiff also argues that the ALJ committed legal error by finding plaintiff was not disabled because he had failed to follow his prescribed treatment (Pl.'s Mem. at 18-19). Plaintiff contends that the ALJ should have applied the "safe-guards" of SSR 82-59, 1982 WL 31384 (S.S.A. Jan. 1, 1982) (Pl.'s Mem. at 18-19).  Plaintiff does not identify what putative safeguards he believes should have been applied (see Pl.'s Mem. at 18-19; Pl.'s Reply at 9).

Pursuant to SSR 82-59, "a claimant may be 'denied disability benefits if the Secretary finds that []he unjustifi-ably failed to follow prescribed treatment and that if []he had followed the treatment, []he would not be disabled under the Act.'"  Goff v. Astrue, 993 F. Supp. 2d 114, 127 (N.D.N.Y. 2012), quoting McFadden v. Barnhart, No. 94 Civ. 8734, 2003 WL 1483444 at *8 (S.D.N.Y. Mar. 21, 2003) (Patterson, D.J.) and citing 20 C.F.R. §§ 404.1530, 416.930 and SSR 82-59, supra, 1982 WL 31384;

accord <u>Spruill ex rel. J.T. v. Astrue</u>, 6:12-CV-6060 (MAT), 2013 WL 885739 at *11 (W.D.N.Y. Mar. 8, 2013).

SSR 82-59 provides that an ALJ can find that a failure to follow prescribed treatment precludes an award of disability benefits only where (1) "[t]he evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity," (2) "[t]he impairment has lasted or is expected to last for 12 continuous months," (3) "[t]reatment which is clearly expected to restore capacity to engage in any [substantial gainful activity] . . . has been prescribed by a treating source" and (4) "there has been refusal to follow prescribed treatment."  SSR 82-59, <u>supra</u>, 1982 WL 31384 at *1.

SSR 82-59 also provides a non-exhaustive list of justifiable reasons for failing to follow prescribed treatment, including:  (1) religious beliefs, (2) cataract extraction for one eye is prescribed but the claimant has severe visual impairment in the other eye which cannot be remedied, (3) "intense and unrelenting" fear of surgery, (4) inability to afford prescribed treatment, (5) a treating source advises against the treatment, (6) unsuccessful major surgery was already performed for the impairment, (7) the treatment has a high degree of risk and (8) the treatment requires amputation.  SSR 82-59, <u>supra</u>, 1982 WL 31384 at *3-*4.

"The SSR 82-59 rule applies when the claimant has already been found to be disabled, but the ALJ concludes that []he is not entitled to benefits because compliance with the prescribed treatment would restore h[is] ability to work." <u>Goff v. Astrue</u>, <u>supra</u>, 993 F. Supp. 2d at 127; <u>accord</u> <u>Spruill ex rel. J.T. v. Astrue</u>, <u>supra</u>, 2013 WL 885739 at *11.

In assessing plaintiff's ability to maintain concentration, persistence or pace at step three of the disability analysis, the ALJ noted that:

> [t]he crucial factor in assessing the degree of limitation on the claimant's ability to maintain attention and concentration is the evidence of significant improvement with medication.  The claimant was seen at Montefiore Behavioral Care in June 2010 indicating a need for psychiatric medication.  Subsequent reports indicate improvement and a report from February 2011 describes the claimant as doing great and denying symptoms of depression (exhibit 12F).  An October 2011 report from Dr. Kriegsman, the claimant's [at]tending internist, indicated that the claimant had increased symptoms of depression.  However, the claimant reported that he had been missing his psychiatric appointments and was not taking his medications (exhibit 10F, p. 1).

(Tr. 32).  Although some of the ALJ's wording here suggests she was applying SSR 82-59, SSR 82-59 could not be applied here because the ALJ never found plaintiff disabled.

In addition, the ALJ's reasoning with respect to the improvement of plaintiff's ability to maintain concentration and attention does not appear to have had any negative effect on the

ALJ's ultimate determination of severity at step three of her
analysis.  The ALJ credited the opinion of plaintiff's treating
physician, Dr. Sharma, who, in contrast to the consulting psychi-
atrist, opined that plaintiff's mental impairments were more
severe and more limiting.  As the ALJ noted in her analysis, Dr.
Sharma found plaintiff had "moderate to marked problems with
attention and concentration, [but] this was largely associated
with understanding and carrying out complex instructions" (Tr.
32).  Thus, at step three, the ALJ appropriately concluded that
plaintiff was mildly impaired in his ability to maintain concen-
tration, persistence or pace.  See 20 C.F.R. pt. 404, subpt. P,
app. 1, § 12.00(C)(3) ("Deficiencies that are apparent only in
performing complex procedures or tasks would not satisfy the
intent of this paragraph B criterion.").

        Accordingly, remand is not required for the ALJ to
comply with SSR 82-59.


        8.  <u>Substantial Evidence</u>


        Plaintiff opposes the Commissioner's motion for judg-
ment on the pleadings, arguing that the ALJ's decision with
respect to plaintiff's RFC is not supported by substantial
evidence.  These arguments are scattered in various sections of
plaintiff's brief and are not well-developed.  The substance of

plaintiff's contentions appears to be that the ALJ's RFC determi-
nation is not supported by substantial evidence because (1) Dr.
Kamin's opinion was not acknowledged by the ALJ, (2) Dr. Bougakov
had opined that plaintiff could relate adequately to others, and
(3) the ALJ's assessment of plaintiff's RFC did not take into
account his impairments in concentration (Pl.'s Mem. at 18; Pl.'s
Reply at 5-6, 8).

First, the failure of the ALJ to mention Dr. Kamin's
opinion does not render her RFC determination unsupported by
substantial evidence.  Dr. Kamin's opinion was not favorable to
plaintiff.  Dr. Kamin, a non-examining consulting psychiatrist,
found plaintiff "not significantly limited" in almost every
category of mental ability (Tr. 299-300).  Dr. Kamin found
"moderate limitations" in only the ability to interact with the
public, the ability for sustained concentration and the ability
to remember and understand detailed instructions (Tr. 299-300).
Dr. Kamin ultimately opined that plaintiff was not disabled and
was capable of at least simple, entry-level work (Tr. 301).  The
ALJ's failure to mention Dr. Kamin's opinion was clearly harmless
as to plaintiff.

Second, plaintiff appears to argue that the ALJ's
finding that he could engage in occasional interaction with
people is not supported by substantial evidence because Dr.

Bougakov had opined that plaintiff could relate adequately to others (Pl.'s Reply at 5).[20]

Dr. Bougakov was a consulting physician who examined plaintiff in October 2010.  His opinion was that:

> The claimant can follow and understand simple direc-
> tions and instructions, can perform simple tasks, and
> can maintain attention and concentration, and should be
> able to maintain a regular schedule.  He possibly is
> somewhat limited in his ability to learn new tasks and

---

[20]Plaintiff's argument here is somewhat difficult to understand.  Plaintiff states in his brief:

> In addition, the ALJ demonstrably gave more weight
> to the opinion from the treating physician than to the
> opinion of Dr. Bougakov, the one time consultative
> examiner and also still found limitations despite the
> so called later improvement in Plaintiff's
> syptomotaly [sic].  Despite Dr. Bougakov opinion that
> the Plaintiff could "relate adequately to others" - and
> similarly despite the so called later improvement in
> pPlaintiff's [sic] symptomotalogy [sic] the ALJ still
> nevertheless found that the Plaintiff could perform
> work which involved only "occasional" contact with
> others, apparently adopting Dr. Sharma's more
> restrictive opinion of "moderate limitations" in
> interacting with others over Dr. Bougakov opinion that
> Plaintiff could "relate adequately to others" - an
> adopting Dr. Sharma's more restrictive assessment of
> moderate limitations despite a later improvement in
> symptomotology [sic].  See Tr. 272 and 353.  Thus,
> there is no reason, much less good reason explaining
> why the limit with regard to interacting with others
> was credited - despite the later improvement with
> symptomotlogy [sic] and despite Dr. Bougakov opinion -
> but not the limit with regard to responding to usual
> work situations and to changes in a routine work
> setting.  See Tr. 353.

(Pl.'s Reply at 4-5 (syntactical errors in original)).

perform complex tasks.  <u>He can make appropriate deci-
sions, relate adequately with others, and deal [with]
stress</u>.  His difficulties are related to psychiatric
symptomatology.

(Tr. 272 (emphasis added)).  The ALJ found plaintiff to be

moderately limited in his ability to interact with others and

limited him to work that required only occasional contact with

people.  Dr. Bougakov's opinion no only supports the ALJ's

finding, if anything, it suggests that plaintiff's ability to

relate to others was actually greater than the ALJ's finding.

Plaintiff has not offered any reason why a finding that plaintiff

can relate adequately with others suggests that plaintiff should

be limited to interacting with others less than occasionally.

Again, the claimed error is harmless.

I conclude, however, that the ALJ did err with respect

to plaintiff's third contention.  The ALJ does not appear to have

accounted for plaintiff's difficulties with concentration in her

RFC finding.  In her analysis of plaintiff's ability to maintain

concentration, persistence or pace, the ALJ noted that Dr.

Sharma's opinion, to which she accorded significant weight, found

plaintiff had "moderate to marked problems with attention and

concentration" (Tr. 32).  The ALJ reasoned that this opinion "was

largely associated with understanding and carrying out complex

instructions" (Tr. 32).  The ALJ concluded that plaintiff had

only mild restrictions in concentration, persistence, and pace (Tr. 32).

Under the analysis required at step three of the disability evaluation process, this conclusion was sufficient because limits in concentration "that are apparent only in performing complex procedures or tasks [do] not satisfy the intent of th[e] paragraph B criterion."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(3).  However, as the ALJ correctly noted, "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" (Tr. 33).  Despite this finding, the ALJ did not restrict plaintiff's RFC in a way that accounted for her finding regarding plaintiff's limitations with respect to concentration and complex instructions.

Accordingly, on remand, the ALJ should reexamine her RFC determination with respect to plaintiff's limitations in concentration, persistence and pace.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respect-fully recommend that the Commissioner's motion for judgment on the pleadings be denied and that plaintiff's cross-motion be granted to the extent of remand.  I recommend that the case be

remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this report and recommendation.

V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Richard J. Sullivan, United States District Judge, 40 Foley Square, Room 2104, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Sullivan.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:   New York, New York
         December 22, 2015

                                Respectfully submitted,


                                HENRY PITMAN
                                United States Magistrate Judge


Copies transmitted to:

Laurence Beck, Esq.
No. 1A
482 East 9th Street
Brooklyn, New York   11218

Sarah S. Normand, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York   10007

Susan D. Baird, Esq.
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007